United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SNEZHANA CHERNI,

Plaintiff,

v.

KAISER FOUNDATION HOSPITALS, et al.,

Defendants.

Case No. 25-cv-06564-PHK

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND, DENYING DEFENDANTS' MOTION TO DISMISS**

Re: Dkts. 16, 17

Plaintiff Snezhana Cherni ("Plaintiff"), on behalf of herself and all other similarly situated individuals, brings this action against Defendants Kaiser Foundation Hospitals and The Permanente Medical Group, Inc. ("Defendants"). [Dkt. 12]. Plaintiff alleges that Defendants violated various wage provisions of California's Labor Code by failing to pay Plaintiff and putative class members in accordance with the base wage rates provided in the Parties' Collective Bargaining Agreement. *Id.* All Parties have consented to magistrate judge jurisdiction. [Dkts. 8, 9].

Now before the Court is Plaintiff's Motion to Remand [Dkt. 16] and Defendants' Motion to Dismiss [Dkt. 17]. The Court heard oral argument on these Motions on June 16, 2026. [Dkt. 32]. Having considered the briefs and argument of counsel at the hearing, and for the reasons discussed herein, the Court **GRANTS** Plaintiff's Motion to Remand and **DENIES AS MOOT** Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiff Cherni and putative class members work as registered nurses for Defendants Kaiser Foundation Hospitals and The Permanente Medical Group, Inc. [Dkt. 12 at ¶ 1]. On June 26, 2025, Plaintiff filed a class action lawsuit in Alameda County Superior Court, alleging Defendants failed

United States District Court
Northern District of California

to pay Plaintiff and similarly situated employees in accordance with base compensation rates specified in the parties' collective bargaining agreements dated September 1, 2017 and September 1, 2022 (collectively, "CBA"), which provide for step increases in nurses' base pay rates according to time of service and seniority. [Dkt. 16 at 5]. The 2017 Collective Bargaining Agreement, in effect from September 1, 2017 to August 31, 2022, sets base wage rates for nurses with step increases specified according to time of service and seniority. *Id.* at 6. The 2022 Collective Bargaining Agreement, in effect from September 1, 2022 to present, likewise sets base wage rates with step increases specified according to time of service and seniority. *Id.* Together, these provisions of the 2017 and 2022 Agreements establish base wage rates for all members of the putative class for the relevant class claim period, June 26, 2021 to the present. *Id.*

Plaintiff alleges Defendants' failure to compensate Plaintiff and the putative class members at their correct base rates resulted in failures to pay all wages earned when due, including unpaid overtime, meal and rest break premiums, sick leave and other earned benefits, as well as failure to provide accurate itemized wage statements. *Id.*

Plaintiff further alleges that Defendants' conduct resulted in violations of California's Labor Code, including failure to pay all overtime earned, failure to provide meal and rest breaks (or wage premiums at the correct hourly rate for missed breaks), failure to provide accurate pay stubs, violation of California's Unfair Competition Law ("UCL"), failure to pay agreed benefits, failure to provide paid sick leave at the applicable rate, and failure to timely pay wages during employment when earned. *Id.* Plaintiff additionally alleges she notified Defendants of their failure to comply with the Agreements' base pay provisions and Defendants acknowledged their noncompliance but have refused and continue to refuse to provide all backpay that should have been earned at the correct base rate. *Id.*

Defendants removed this case to the Northern District of California on August 4, 2025. [Dkt. 1]. On August 26, 2025, Defendants filed a motion to dismiss Plaintiff's original complaint. [Dkt. 10]. Before that motion could be fully briefed, Plaintiff filed a First Amended Complaint ("FAC") on September 9, 2025. [Dkt. 12]. In her Amended Complaint, Plaintiff dropped her originally pleaded breach of contract claim. *Id.* Soon after, on September 17, 2025, Plaintiff filed a motion

to remand. [Dkt. 16]. The original motion to dismiss was denied as moot, *see* Dkt. 15, and Defendants filed a motion to dismiss Plaintiff's FAC on September 23, 2025. [Dkt. 17].

**LEGAL STANDARD**

Federal courts are courts of limited jurisdiction. *New Frontier Inv. AG v. BitCenter, Inc.*, 715 F. Supp. 3d 1245, 1252 (N.D. Cal. 2024). A defendant may remove a suit filed in state court only if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."). If, however, "at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). The removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). Indeed, federal courts must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Id.* (citations omitted). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citation omitted) (internal quotation marks omitted).

Under the "complete pre-emption doctrine," however, "the pre-emptive force of [certain state] statute[s] is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Therefore, any claim based on "an area of state law [that] has been completely pre-empted, . . . is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* (citation omitted).

Section 301 of the Labor Management Relations Act ("LMRA"), for instance, preempts "any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23 (1983) (internal quotation marks omitted) (footnote omitted). While "a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court," *Curtis*

United States District Court
Northern District of California

*v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019), Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994).

In the Ninth Circuit, "§ 301 preempts a plaintiff's state law claim only where the claim (1) 'arises entirely from' a collective bargaining agreement or (2) 'requires interpretation of' the agreement." *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1088 (9th Cir. 2025) (quoting *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018) (en banc)). The Ninth Circuit employs the two-part *Burnside* test to determine whether § 301 preempts a plaintiff's state law claim. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007).

## DISCUSSION

Defendants removed this action to this United States District Court under 28 U.S.C. § 1441, which provides for removal of civil actions to the District Court for claims "arising under the Constitution, laws, or treaties of the United States." *See also* 28 U.S.C. § 1331. Following removal, Plaintiff amended her Complaint, removing her breach of contract claim. [Dkt. 12]. Plaintiff "concedes [the breach of contract claim] would confer federal subject matter jurisdiction under section 301 of the LMRA if that claim were still operative." [Dkt. 16 at 8]. Because that claim has been removed, however, Plaintiff argues "the now-operative FAC no longer provides any basis for federal subject matter jurisdiction." *Id.*

Defendants argue federal jurisdiction remains proper because Plaintiff premises each of her claims on a right based exclusively in the CBA, and interpretation of the CBA is necessary to resolve Plaintiff's claims, and thus the claims are preempted. [Dkt. 19 at 5].

To assess whether this case is properly before the District Court, the Court now undertakes the two-part *Burnside* test to determine whether § 301 preempts Plaintiff's state law claims. *Burnside*, 491 F.3d at 1059-60.

### I. STEP ONE: PLAINTIFF'S RIGHTS UNDER CAUSES OF ACTION I-VIII EXIST INDEPENDENTLY FROM THE CBA'S.

At step one, a court must determine whether the asserted cause of action involves a right conferred upon an employee by virtue of state law or a CBA. *See Kobold v. Good Samaritan Reg'l*

*Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016). "If the right exists solely as a result of the CBA, then the claim is preempted [at step one], and [the] analysis ends there." *Id.* (citation omitted) (internal quotation marks omitted).

Here, Plaintiff argues that her wage claims emanate from the California Labor Code, not the CBA. [Dkt. 16 at 10]. Plaintiff's operative complaint looks to the CBA only for the applicable base wage rates. *Id.* Plaintiff argues that "the fact that the CBA provides for specified base rate increases in no way changes the fact that failure to pay wages based on the applicable base rate is a Labor Code violation." [Dkt. 22 at 5].

Defendants argue that "[e]ach and every one of Plaintiff's claims arises from a negotiable right under the CBA." [Dkt. 19 at 8]. Specifically, "Plaintiff asserts that Defendants violated the CBA by failing to provide Plaintiff and other putative class members with Step increase compensation 'in accordance with the rates set in the parties' collective bargaining agreement.'" *Id.* (citing dkt. 12 at ¶¶ 1, 22-23). According to Defendants, "[s]ince Plaintiff alleges violation of a right that only exists under the CBA (i.e., the right to step increase pay), the claims are preempted under Section 301." *Id.*

According to Defendants, Plaintiff's claims are "premised directly on the right to Step increase pay." *Id.* at 9. This is incorrect. Plaintiff argues, and the operative Complaint supports, that the underlying right at issue here is the right to unpaid wages, in other words, the right to be paid an appropriate amount under the California Labor Code. [Dkt. 16 at 5]. This is not to say the CBA is irrelevant to Plaintiff's claims, but evidentiary relevance is not dispositive at this stage of the analysis. The question is whether the CBA itself is the legal basis for the claims. The CBA sets specific base wage rates according to job position and time in service. These agreed rates set the minimum amounts Defendants were obligated to pay under the California Labor Code. But the cause of action asserting the legal right to be paid emanates from the California Labor Code. The fact that the CBA provides for specified base rate increases does not change the fact that the underlying cause of action for unpaid wages is based on a right conferred by state law. Thus, Plaintiff satisfies the first part of the *Burnside* test.

## II. STEP TWO: PLAINTIFF'S RIGHTS UNDER CAUSES OF ACTION I-VIII DO NOT REQUIRE INTERPRETATION OF THE CBAS.

If "the right exists independently of the CBA, [the Court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Burnside*, 491 F.3d at 1059 (citation omitted). *Burnside* explains how to analyze whether a state law-based claim is "substantially dependent" on analysis of a CBA:

> [T]he Court directs us to decide whether the claim can be resolved by look[ing] to versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not. Although the look to/interpret distinction is not always clear or amenable to a bright-line test, some assessments are easier to make than others. For example, we know that neither look[ing] to the CBA merely to discern that none of its terms is reasonably in dispute, nor the simple need to refer to bargained-for wage rates in computing [a] penalty, is enough to warrant preemption. . . . [W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.

*Id.* at 1060 (internal citations omitted) (internal quotation marks omitted).

Defendants argue that "Plaintiff's claims all relate to Defendants' alleged failure to pay amounts owed based on Step increases due under the CBA, which cannot be analyzed absent CBA interpretation." [Dkt. 19 at 10]. Specifically, Defendants argue that "the CBA does not expressly define what 'tenure' means for the purposes of calculating Step increases . . . [a]ccordingly the Court would need to interpret the CBA to determine the definition of 'tenure' and how it is measured." *Id.* Defendants also argue that interpretation of the word "Year" in the CBA is required. *Id.* at 11. Defendants additionally argue that any defenses pled "will necessarily require an interpretation of the CBA." *Id* at 12. According to Defendants, "to defend against Plaintiff's alleged failure to pay overtime wages and penalties in connection with meal periods or rest periods, they will have to rely upon the sections in the CBA that specify the agreement on those issues, as well as to interpret the meaning of 'tenure.'" *Id.*

Plaintiff argues that the terms "tenure" and "Year" as used in the CBA are unambiguous. [Dkt. 22 at 7]. Plaintiff cites to specific sections of the CBA which expand upon these terms and provide contextual clarification. *Id.* at 7-8. In response to Defendants' argument that they will plead defenses that would necessarily require interpretation of the CBA, Plaintiff argues these potential defenses are speculative and do not trigger section 301 preemption. *Id.* at 9.

Under applicable legal standards, it is only necessary to look to the CBA in order to address Plaintiff's claims, and it is not necessary to interpret the CBA to address Plaintiff's causes of action. "[T]he simple need to refer to bargained-for wage rates" does not trigger preemption: "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Burnside*, 491 F.3d at 1060 (citing *Livadas*, 512 U.S. at 124-25). Indeed, the example provided in *Burnside* is instructive and closely analogous to the situation here: there, the need to refer to bargained-for wage rates to compute a penalty is not enough to warrant preemption; here, for Plaintiffs claims, the need to refer to bargained-for step wage increases or base rates is similarly not enough to warrant preemption. *Id.*

Defendants' arguments that the terms "tenure" and "year" require interpretation in the CBA are equally unavailing. Here, the CBA itself provides facial clarification regarding the use and meaning of the term "tenure." *See, e.g.*, Dkt. 21-4 at 92 ("Section C – Tenure Increases"). Other than asserting that this word would require interpretation, Defendants do not explain what is so ambiguous about the term as used in the CBA that interpretation would be required. The fact that the CBA has a whole section on tenure increases and uses the term "tenure" in context which clarifies the meaning of that term undermines Defendants' argument. Under the *Burnside* test, the fact that the CBA will be referred to does not result in preemption.

Similarly, the text of the CBA demonstrates how the term "Year" is used with respect to tenure step increases. *See id.* ("Regular Nurses shall progress to the eleventh year tenure step upon completion of ten (10) years of continuous service (not broken by termination) with Kaiser Permanente if they are presently at the eighth year tenure step rate."). Defendants do not explain what is so ambiguous about the term "Year" as used in the CBA that interpretation would be required. The fact that the CBA uses the term "Year" in context which clarifies the meaning of that term undermines Defendants' argument. Under the *Burnside* test, the fact that the CBA will be referred to does not result in preemption.

Thus, the Court finds these terms are not properly the subject of an interpretation dispute and do not require interpretation of the CBA. The fact that the CBA will be referred to for these

terms does not mean they require interpretation sufficient to result in preemption.

Furthermore, the Ninth Circuit has rejected Defendants' argument regarding reliance on the CBA as an aspect of a potential (and currently asserted) affirmative defense. "[R]eliance on the CBA as an aspect of a defense is not enough to inject[ ] a federal question into an action that asserts what is plainly a state-law claim . . . [T]he plaintiff is the master of the complaint and . . . if the defendant could engineer the forum in which the claim shall be litigated based on the substance of his defense, the plaintiff would be master of nothing." *Burnside*, 491 F.3d at 1060 (citing *Caterpillar*, 482 U.S. at 398-99) (internal quotation marks omitted). Here, as in *Burnside*, any "interpretations" of the CBA which Defendants may speculatively assert as defenses in an attempt to engineer a federal forum do not create a basis for section 301 preemption.

## CONCLUSION

For all the reasons discussed herein, the Court **GRANTS** Plaintiff's Motion to Remand. Because this case shall be remanded, the Court **DENIES AS MOOT** Defendants' Motion to Dismiss. *See Leo v. Alameda Cnty. Med. Center*, No. C 06–03799 SI., 2006 WL 2669001, at *3 (N.D. Cal. Sept. 18, 2006) (denying motion to dismiss as moot after granting motion to remand). Accordingly, this case is **REMANDED** to the Superior Court for the County of Alameda.

This Order **RESOLVES** Dkts. 16 and 17.

**IT IS SO ORDERED.**

Dated: September 30, 2026

PETER H. KANG
United States Magistrate Judge